BELSOME, Judge.
| i J.L. appeals a judgment from the Juvenile Court for the Parish of Orleans adjudicating him delinquent on two counts: 1) Possession of a Controlled Dangerous Substance in a Drug Free Zone (La. R.S. 40:981.3); and 2) Possession with Intent to Distribute a Schedule I Controlled Dangerous Substance (La. R.S. 40:966(A)(2)). For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
J.L. was stopped by Officer Donald Sino, Jr. when he tried to enter Fredrick Douglas High School without passing through the metal detector. Officer Sino proceeded to conduct a pat down and discovered a bulge in J.L.’s pocket. The bulge was a clear plastic baggie containing fourteen smaller blue plastic baggies of marijuana.
Following a petition filed by the District Attorney for the Parish of Orleans, an adjudication hearing was held in juvenile court at which time J.L. was adjudicated delinquent on both charges. J.L.’s motion to suppress evidence was denied by the court.
|2The juvenile court entered a disposition of commitment to the Department of Public Safety and Corrections for a period not *994 to exceed one year. Execution of the commitment was suspended, and J.L. was placed on active probation under the supervision of the Office of Youth Development for one year.
During the adjudication hearing, the State presented testimony from Officer Sino, and New Orleans Police Officer Lawrence Weathersby, Jr. The defense presented Lori Marshall, an investigator for Juvenile Regional Services, and J.L. as witnesses.
Officer Sino testified that while on duty on the morning of October 21, 2008, he was notified by two of the school’s coaches that students were attempting to sneak into the school through the gym, as opposed to the front entrance wherein students were required to pass through a metal detector. Officer Sino discovered J.L., in his school uniform, entering the school through the gym. When questioned by Officer Sino, J.L. admitted that he had not gone through the metal detector at the front entrance. When asked by Officer Sino if he could conduct a pat down on him, J.L. did not refuse. During the pat down, Officer Sino detected a bulge in the left pocket of J.L.’s pants. J.L. was wearing another pair of shorts inside of his school pants. In response to the question, “did you discover what the bulge was,” Officer Sino stated: “I asked [J.L.] would he go inside his pants pocket and see whatever that bulge was, he started shaking and he refused to go inside his pants pocket to get the bulge was inside, and that’s when I kind of pulled his pants down a little bit and I went inside his pants pocket and retrieved the clear plastic bag of marijuana inside his left pants pocket.” Officer Sino testified that the clear plastic bag contained fourteen individual blue clear plastic bags of a substance he believed to be marijuana.
|3Officer Sino escorted J.L. to the school office where Officer Sino’s senior supervisor conducted another pat down of J.L. At that time, one hundred and forty-two dollars in cash was found inside of the right pocket of J.L.’s pants. Shortly thereafter, Officer Weathersby arrived at the scene to conduct a further investigation. Officer Weathersby counted the money found on J.L., which consisted of four twenty-dollar bills, one five-dollar bill, and fifty-seven one-dollar bills. Officer Weathersby, in the presence of J.L., conducted a test on the substance confiscated from J.L. The substance tested positive for marijuana. The crime lab report, confirming the positive test results, was introduced into evidence.
Officer Weathersby corroborated the testimony of Officer Sino regarding the investigation and arrest of J.L. Additionally, Officer Weathersby identified the fourteen individual bags of marijuana and the cash confiscated from J.L., which Officer Weathersby labeled and signed at the time of J.L.’s arrest. Officer Weathersby also testified that the quantity of bills found on J.L. was consistent with the sale of narcotics.
Ms. Marshall was called as a defense witness. As an investigator for Juvenile Regional Services, Ms. Marshall interviewed Officer Sino on February 9, 2009, in connection with J.L.’s case. Ms. Marshall testified as to what Officer Sino told her during the interview. Ms. Marshall had no first hand knowledge of the facts surrounding J.L.’s arrest. Ms. Marshall’s version of the “pat down” of J.L., as purportedly told to her by Officer Sino, differed from Officer Sino’s testimony at trial. Ms. Marshall stated that Officer Sino told her the following: 1) He began to pat down J.L. and did not find anything in his pockets; 2) He then moved downward to pat down J.L.’s socks; 3) J.L. moved his *995 leg back and Unformed Officer Sino that he had marijuana in his sock; and 4) Officer Sino removed a “nickel bag” of marijuana from J.L.’s sock.
When questioned on cross-examination about the discrepancy in Ms. Marshall’s testimony, Officer Sino stated that Ms. Marshall was mistaken, and that the pat down she described was actually one he had conducted on another student, which Officer Sino was able to identify by name. Officer Sino testified that he did not tell Ms. Marshall that he retrieved the marijuana from J.L.’s socks as she described.
J.L. testified that he did not go through the school’s metal detector on the morning of October 21, 2008. He admitted that he consented to the pat down, and that he was in possession of the marijuana and cash found in his pockets. As an explanation for the cash in his possession, J.L. claimed that he had been employed at Rally’s for two months, working approximately thirty hours per week at $6.55 per hour.
LAW AND ANALYSIS
In his sole assignment of error, J.L. contends that the State failed to present sufficient evidence to uphold the conviction for possession with intent to distribute marijuana. More specifically, J.L. argues that there was no evidence to support the conclusion that the marijuana found on J.L. was inconsistent with personal use or that J.L. distributed or attempted to distribute the marijuana.
In a delinquency proceeding, the State must prove beyond a reasonable doubt that the child committed every element of the offense charged. La. Ch. C. art. 883. Just as in a proceeding against an adult, the constitutional standard for evaluating the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that |sthe state proved all of the essential elements of the crime beyond a reasonable doubt. State in Interest of R.T., 00-0205, p. 2 (La.2/21/01), 781 So.2d 1239, 1241, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
An appellate court reviews the facts and evidence and applies the law as it does in an adult proceeding; likewise, the appellate court grants deference to the trier-of-fact that observed the demeanor of the witnesses and was in the best position to determine credibility and the weight to be given the evidence. La. Const, art. 5, § 10(A) and (B); State v. J.N., 07-1229, pp. 7-8 (La.App. 4 Cir. 5/7/08), 984 So.2d 910, 915.
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. La. R.S. 40:966(A). Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(1).
The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute. State v. Davis, 06-1330, p. 9 (La.App. 4 Cir. 4/25/07), 958 So.2d 713, 718; State v. Carey, 07-674, p. 4 (La.App. 5 Cir. 12/27/07), 975 So.2d 27, 29, writ denied, 08-0430 (La.11/10/08), 996 So.2d 1064. The presence of large sums of cash is considered circumstantial evidence of intent to distribute. State v. Johnson, 00-1528, p. 6 (La.App. 4 Cir. 2/14/01), 780 So.2d 1140, 1144; State v. Brown, 42,188, p. 14 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 743; State v. Young, 99-1264, p. 14 *996 (La.App. 1 Cir. 3/31/00), 764 So.2d 998, 1006.
16In State v. Hearold, 603 So.2d 731, 735 (La.1992), the Supreme Court stated:
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. In State v. House [325 So.2d 222 (La.1975) ], this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. [citations omitted)
This Court interpreted Hearold in State v. Cushenberry, 94-1206, p. 6 (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786:
In affirming defendant’s conviction, we first note that the Court in Hearold refers to the factors enunciated as “useful” in determining whether circumstantial evidence is sufficient to prove intent to distribute. We do not interpret the holding in Hearold to require that the evidence fall squarely within the factors enunciated to be sufficient for the jury to find the requisite intent to distribute.
Following the testimony and presentation of evidence in the present case, the juvenile court judge found J.L. guilty of possession with intent to distribute a Schedule I controlled dangerous substance “based on the fact that [J.L.] had a number of bags of marijuana and cash in small denomination.” Analyzing the facts of this case and applying the Hearold factors, we conclude that the trial court’s finding of specific intent to distribute marijuana was sufficiently supported by the circumstantial evidence presented. The State presented evidence that the packaging of the marijuana was in a form consistent with distribution. Further supporting the finding of intent to distribute was the large amount of cash in small bills consistent with the sale of narcotics.
17Thus, viewing the totality of the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that J.L. possessed the marijuana with the specific intent to distribute it. The evidence presented by the State, both direct and circumstantial, clearly supports the trial court’s ruling. Accordingly, the judgment is affirmed.
AFFIRMED.